UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES PHILLIPS,

                Petitioner,                Case No. 1:13-cv-609

v.                                     Honorable Robert Holmes Bell

JOHN PRELESNIK,

                Respondent.

_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Over a period of several days during November of 2009, a Genesee County Circuit Court jury heard testimony on two consolidated cases involving criminal sexual conduct (CSC) charges against Petitioner Charles Phillips.  In Case No. 09-025251-FC, Petitioner was charged with six counts of first-degree CSC and two counts of second degree CSC, all relating to one victim under the age of 13 years: DL.   In Case No. 09-025421-FC, Petitioner was charged with two counts of first-degree CSC, three counts of second-degree CSC, one count of accosting a child for immoral purposes, and one count of producing child sexually abusive material, all relating to three victims, brothers, under the age of 13 years: AB, TB, and ZB.

        On December 1, 2009, after deliberating for less than three hours, the jury returned its verdict.  Petitioner was convicted of six counts of first-degree CSC, MICH. COMP. LAWS § 750.520b(1)(a); five counts of second-degree CSC, MICH. COMP. LAWS § 750.520c(1)(a); one count of accosting a child for immoral purposes, MICH. COMP. LAWS § 750.145a; and one count of

producing child sexually abusive material, MICH. COMP. LAWS § 750.145c(2).[1]  On January 13, 2010, Petitioner was sentenced to terms of imprisonment as follows: (A) in Case No. 09-025251-FC, sentences of life imprisonment on first-degree CSC counts I and III; sentences of 40 years to 66 years, 8 months on first-degree CSC counts IV and VI; and sentences of 6 years, 3 months to 15 years on second-degree CSC counts VII and VIII; all of these sentences to be served consecutive to each other;[2] and (B) in Case No. 09-025421-FC, a sentence of life imprisonment on first-degree CSC count I; a sentence of 50 to 75 years on first-degree CSC count III; sentences of 6 years, 3 months to 15 years on second-degree CSC counts II, IV, and VII; a sentence of 2 to 4 years on accosting a child for immoral purposes Count VI; and a sentence of 6 years, 3 months to 20 years on producing child sexually abusive material Count V; all of these sentences to be served concurrently with each other and the sentences in Case No. 09-025251-FC.  The trial court expressed its sentencing purpose: "It is my intention that you are sentenced to prison for so long that you'll die there . . . ."  (Sentence Tr. at 23, ECF No. 26.)[3]

---

[1] The jury found Petitioner not guilty of two counts of first-degree CSC with respect to DL.

[2] The Michigan Court of Appeals determined that the second-degree CSC sentences could not be consecutive to each other.  *People v. Phillips*, No. 296251, 2011 WL 4375110 (Mich. Ct. App. Sep. 20, 2011).  The court remanded to permit Petitioner's sentences to be corrected accordingly.

[3] The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| July 14, 2009 Preliminary Examination | (Prelim. Examination Tr. at __, ECF No. 15) |
| November 4, 2009 Walker Hearing Transcript | (Walker Hr'g Tr. at __, ECF No. 21) |
| November 13, 2009 Motion to Suppress Transcript | (Mot. to Suppress Tr. at __, ECF No. 18) |
| November 18, 2009 Trial Transcript  (Volume 1) | (Trial Tr. I at __, ECF No. 19) |
| November 19, 2009 Trial Transcript  (Volume 2) | (Trial Tr. II at __, ECF No. 20) |
| November 20, 2009 Trial Transcript  (Volume 3) | (Trial Tr. III at __, ECF No. 22) |
| November 24, 2009 Trial Transcript  (Volume 4) | (Trial Tr. IV at __, ECF No. 23) |
| November 25, 2009 Trial Transcript  (Volume 5) | (Trial Tr. V at __, ECF No. 24) |
| December 1, 2009 Trial Transcript  (Volume 6) | (Trial Tr. VI at __, ECF No. 25) |
| January 13, 2010 Sentence Transcript | (Sentence Tr. at __, ECF No. 26) |
| January 13, 2010 Resentence Transcript | (Resentence Tr. at __, ECF No. 27). |

In his pro se amended petition Petitioner raises seven issues:

I.      The third interagation [sic] statement should have been Suppresed [sic] (confession) because the miranda warnings received two days prior were stale by the third interrogation was performed and due to his condition.

II.     Trial court allowed a non victim to allocate [sic] at sentencing where he encouraged the court to sentence on allegations [that were not part of the case] and trial counsel failed to object.

III.    The Petitioner was not afforded with effective assisstance [sic] of counsel by his trial attorney for numerous issues.

IV.     Petitioner[']s trial counsel failed to request or present any expert witnesses, such testimony if provided would have changed the verdict.

V.      Trial counsel faile[d] to file Petitioner[']s requested interlocatory [sic] appeal, denial of counsel at a critical stage & conflict of interest.

VI.     Trial attorney failed to investigate and or call witnesses provided by Petitioner for his defense, given prior to trial.

VII.    Petitioner claims trial court cannot set aside a valid or partial valid sentence while the Petitioner left the court building awaiting execution.

( Am. Pet., ECF No. 5, Page ID.299-310.)  Petitioner raised all of these issues in the briefs he filed in the Michigan Court of Appeals.  (Def.-Appellant's Br.; Def.-Appellant's Supplemental Br., ECF No. 28.)  In an unpublished opinion issued September 20, 2011, the court of appeals affirmed the convictions.  Petitioner sought leave to appeal to the Michigan Supreme Court, raising the issues he had raised in the court of appeals.  (Appl. for Leave to Appeal, ECF No. 29.)  The supreme court denied leave to appeal on March 5, 2012.  *People v. Phillips*, 808 N.W.2d 782 (Mich. 2012).

Petitioner filed his initial petition on June 5, 2013.  He filed his amended petition on July 15, 2013.  On January 24, 2014, Respondent filed an answer to the petition, (ECF No. 12), which addressed all of the issues in the amended petition.  Respondent's answer argues that the habeas petition should be denied because the grounds upon which it is based are without merit.  On

-3-

February 11, 2014, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF Nos. 13-29.)

Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are meritless.  Accordingly, the Court will deny the petition.

### Procedural and Factual Background

Petitioner's habeas challenges relate to matters before trial (the *Walker* hearing, Issue I), matters after trial (sentencing, Issues II and VII), and actions Petitioner's counsel failed to take throughout the proceedings (Issues III-VI).  An in-depth recounting of the trial testimony of each witness is not necessary to resolve Petitioner's claims.

At Petitioner's trial, the prosecutor introduced testimony from fifteen witnesses.  Five of the witnesses were children, the four victims in the charged crimes (DL, AB, TB, and ZB) plus another victim (CA).  The children provided similar testimony: Petitioner had, on multiple occasions, either anally penetrated, performed oral sex, and/or masturbated them.  The children were not entirely clear with respect to the dates of these events, with one notable exception.  Each child recalled his participation with Petitioner in a sleepover on the occasion of Petitioner's son's birthday party that resulted in a pedophilic orgy in a tent in Petitioner's mother's backyard.[4]  The children, except for AB, also testified that Petitioner took nude pictures of them.[5]

The parents of AB, TB, and ZB testified, as did the mother of DL.  The individual to whom TB initially reported the crimes testified.  The forensic interviewers of the victims testified.

---

[4]TB: (Trial Tr. II at 136-138, ECF No. 20); ZB: (Trial Tr. III at 19-22, ECF No. 22); AB: (Trial Tr. III at 57-61, ECF No. 22); DL: (Trial Tr. IV at 142-149, ECF No. 23); CA: (Trial Tr. IV at 185-192, ECF No. 23).

[5]TB: (Trial Tr. II at 144-153, ECF No. 20); ZB (Trial Tr. III at 24-27); DL (Trial Tr. IV at 155-156, ECF No. 23); CA (Trial Tr. IV at 195-196, ECF No. 23).

The police officer who initially responded to the report testified.  Detective Todd Gilbert, the lead investigator, testified as well.

The testimony of Detective Gilbert warrants closer scrutiny as it bears directly on Petitioner's motion to suppress his confession.  Detective Gilbert conducted several interviews with Petitioner.  Detective Gilbert conducted the first interview the night of February 2, 2009, after Petitioner was arrested.  (Walker Hr'g Tr. at 5-20, ECF No. 21; Trial Tr. III at 116-151, ECF No. 22.)  Petitioner participated in the second interview on February 3, 2009, at approximately 9:30 a.m. (Walker Hr'g Tr. at 21-27, ECF No. 21; Trial Tr. III at 152-165, ECF No. 22.)  Detective Gilbert interviewed Petitioner for the third and final time during the afternoon of February 4.  (Walker Hr'g Tr. at 27-39, ECF No. 21; Trial Tr. III at 166-167, ECF No. 22; Trial Tr. IV at 4-55, ECF No. 23.) During the final interview Petitioner acknowledged that he had performed oral sex on and masturbated TB and AB and could not rule out the possibility that he had done the same with others.

The final witness for the prosecutor was William McCoy, a computer forensic specialist with the Grand Blanc Township Police Department.  He testified regarding incriminatory images and emails he found on Petitioner's laptop, cell phone, and camera.

The defense offered the testimony of two witnesses: Petitioner's mother and Petitioner's son.  Petitioner's mother testified that she neither saw nor heard anything inappropriate in her backyard the night of the birthday party sleepover.  (Trial Tr. V at 51-62, ECF No. 24.) Petitioner's son testified that his father never did any of the things the victims claimed.[6]  (Trial Tr. V at 63-79, ECF No. 24.)

## Standard of Review

---

[6]The victims had previously testified that Petitioner's son was often present or in close proximity during the sexual abuse.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-

court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

I.  <u>Suppression of Petitioner's confession (Issue I)</u>

Petitioner contends that his confession, introduced through the testimony of Detective Gilbert, was involuntary because the *Miranda* warnings were stale and he was physically and psychologically too vulnerable.  The Michigan Court of Appeals described Petitioner's position as follows:

> Defendant first argues that the trial court erroneously denied his motion to suppress statements that he made during a third custodial interview, in which he admitted to sexually abusing at least two of the child victims and admitted that it was possible that he had sexually abused other children as well.  Defendant argues that he was not properly advised of his constitutional rights before giving the statements, and that the statements were involuntary.  The trial court denied defendant's motion after conducting an evidentiary hearing.  We find no error.

*Phillips*, 2011 WL 4375110 at *1.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Under *Miranda*, evidence of a defendant's custodial statement may only be introduced as evidence of guilt at trial if the defendant was first given such warnings.  *Id.* at 479.

Here, Petitioner claims his custodial statement should have been excluded because he was effectively not provided *Miranda* warnings prior to his third custodial statement which was incriminatory.

-8-

Whether or not Petitioner received the warnings is critical. "[T]he ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 121 S. Ct. 1335, 1342 (2001) (quotation and citation omitted). The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare. *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (citation omitted).

As part and parcel of Petitioner's argument that the police failed to properly provide the *Miranda* warnings, he also argues his confession was coerced. When a criminal defendant claims that his confession was rendered involuntary by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will of the accused. *See Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986).

Typically, findings of coercive police conduct involve brutality or threats of physical coercion. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (threats of physical violence); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); *Beecher v. Alabama*, 389 U.S. 35 (1967) (gun held to head of wounded suspect to extract confession); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir. 1988)

(officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant).  Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused.  *See Fulminante*, 499 U.S. at 287-88.  Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health."  *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).

Petitioner's arguments that he was not effectively provided the *Miranda* warnings and that his confession was rendered in a coercive environment are discussed below.

A.    The timeliness of the *Miranda* warnings

In assessing whether Petitioner's confession was admissible the Michigan Court of Appeals described the standard as follows:

> Statements of an accused made while in custody are not admissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights.  *People v. Harris*, 261 Mich. App. 44, 55; 680 N.W.2d 17 (2004).  The prosecutor must establish a valid waiver by a preponderance of the evidence.  *Id.* Before a custodial statement may be used against a defendant, he must be warned of his right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel before being questioned.  *Id.*

*Phillips*, 2011 WL 4375110 at *2.  Although the Michigan Court of Appeals relied upon state cases in reviewing this issue, the authorities were wholly consistent with the clearly established federal law cited above.

The Michigan Court of Appeals concluded that Detective Gilbert appropriately advised Petitioner of his *Miranda* rights in connection with each interview:

> Initially, we find no merit to defendant's argument that his statements in his third custodial interview were not admissible because he was not advised of his *Miranda*

-10-

rights before the third interview. The record discloses, and defendant does not dispute, that he was properly advised of his *Miranda* rights when he was first questioned on February 2, 2009. He was verbally advised of his rights and also provided with a written advice-of-rights form that he was allowed to read, and he signed the form indicating that he understood his rights. Although the police did not readvise defendant of those rights before the third interview on February 4, 2009, the police are not obligated to readvise a defendant of his rights during subsequent questioning. *People v. Littlejohn*, 197 Mich. App. 220, 223; 495 N.W.2d 171 (1992); *People v. Godboldo*, 158 Mich. App. 603, 605; 405 N.W.2d 114 (1986). The record indicates that defendant was told before the third interview that his rights still applied and defendant indicated that he understood that. Thus, the only question is whether, viewing the totality of the circumstances, defendant's statements during his third interview were voluntary. *Id.* at 606.

*Phillips*, 2011 WL 4375110 at *2 (footnote omitted).

The Supreme Court has expressly stated that "[p]olice are not required to rewarn suspects from time to time." *Berghuis v. Thompkins*, 560 U.S. 370, 386 (2010). Nonetheless, it is possible that the *Miranda* warnings might become so remote in time or circumstance that the warning becomes too stale to support a claim that the rights have been knowingly waived. In *Wyrick v. Fields*, 459 U.S. 42 (1982), the Supreme Court concluded that a suspect did not need to be readvised of his *Miranda* rights, which he had waived in writing before the initiation of a subsequent examination, because "the circumstances [had not] changed so seriously that his answers no longer were voluntary" and his waiver was still knowing and intelligent. *Wyrick*, 459 U.S. at 47-48. Certainly, then, if circumstances change significantly, the suspect's provision of an incriminating statement may not, in and of itself, evidence a knowing and intelligent waiver of advised rights. But, the courts have not adopted any *per se* rule. *United States v. Weekly*, 130 F.3d 747, 751 (6th Cir. 1997) ("The court have generally rejected a *per se* rule as to whan a suspect must be readvised of his rights after the passage of time or a change in questioners.")

Petitioner identifies a number of factors courts have looked to when considering this issue on a case-by-case basis.  (Pet'r's Br., ECF No. 6, PageID.324.)  The analyses of the issue by the trial court and by the Michigan Court of Appeals indicate the courts looked to the factors Petitioner contends are relevant.  Indeed, Petitioner does not challenge the courts' factual findings as unreasonable; rather, he challenges the legal conclusions drawn from those facts.  At that point Petitioner's challenge fails because he has failed to identify any Supreme Court authority that holds a statement to be unknowing under factual circumstances that are materially indistinguishable from the circumstances in his case.  *Bell*, 535 U.S. at 694.[7]  Absent such authority, Petitioner cannot show that the Michigan Court of Appeals's determination of this issue is contrary to clearly established federal law.

---

[7]Indeed, the Sixth Circuit has recognized the difficulty in demonstrating that a court has unreasonably applied *Fields* in light of the fact-intensive, case-by-case approach that *Fields*, 495 U.S. 42, calls for.  *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010) ("Accordingly, the Ohio Supreme Court's conclusion that Doyle was not required to fully advise Treesh of his *Miranda* rights was not contrary to or an unreasonable application of *Fields*, particularly in light of the application of *Fields* by our sister circuits.") The absence of a Supreme Court-mandated bright line is aptly demonstrated in *United States v. White*, 68 F. App'x 535 (6th Cir. 2003).  In *White*, a case factually very similar to the instant case, the panel affirmed the district court's conclusion that the constitution did not require suppression of the incriminatory statement, but two members of the panel concluded the waiver was knowing and the remaining member concluded the waiver was unknowing.  Each judge wrote separately on the issue of the appropriate standard to apply when assessing whether a *Miranda* warning was too stale.

### B.      Coercive environment

The Michigan Court of Appeals recognized that Petitioner's argument regarding the admissibility of his confession involved two distinguishable but closely related propositions. The first, that the *Miranda* warnings were so stale that his waiver of rights was unknowing, required looking at the totality of the circumstances surrounding the statement. The second proposition, that his statement was involuntary because it was given in a coercive environment, also requires consideration of the totality of the circumstances. The court of appeals viewed those circumstances as follows:

> Thus, the only question is whether, viewing the totality of the circumstances, defendant's statements during his third interview were voluntary. *Id.* at 606.

> The voluntariness of a defendant's statement is determined by examining the conduct of the police. *People v. Tierney*, 266 Mich. App. 687, 707; 703 N.W.2d 204 (2005). "[T]he voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct." *People v. Howard*, 226 Mich..App. 528, 543; 575 N.W.2d 16 (1997). In *Tierney*, 266 Mich. App. at 708, this Court stated:

>> In determining voluntariness, the court should consider all the circumstances, including: "[1] the age of the accused; [2] his lack of education or his intelligence level; [3] the extent of his previous experience with the police; [4] the repeated and prolonged nature of the questioning; [5] the length of the detention of the accused before he gave the statement in question; [6] the lack of any advice to the accused of his constitutional rights; [7] whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; [8] whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; [9] whether the accused was deprived of food, sleep, or medical attention; [10] whether the accused was physically abused; and [11] whether the suspect was threatened with abuse." *People v. Cipriano*, 431 Mich. 315, 334; 429 N.W.2d 781 (1988). No single factor is determinative. *Sexton, supra* [461 Mich] at 753. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Cipriano, supra* at 334.

> Defendant argues that he was not "clear-headed" by the time of the third interview because he had not taken his prescription medication for depression for two or three

days, he had refused to eat the food he was served while in jail the previous two days, and he had been unable to sleep during the previous two or three days. In addition, he had been placed on a suicide watch while in jail and he claimed that he was intimidated and badgered by the detective during the interview. The trial court found that any discomfort defendant was feeling from a lack of sleep or lack of food did not affect his ability to voluntarily participate in the interview process. The court also found no evidence of police coercion. Those findings are not clearly erroneous. Indeed, at the conclusion of the third interview, which lasted approximately two hours, defendant told the interviewing officer, Detective Gilbert, that he had been "very fair" and "very professional" during his questioning.

The trial court found that the primary factor bearing on the voluntariness of defendant's statements was that he had not taken his medication for depression for two or three days, but determined that this factor did not prevent defendant from voluntarily giving a statement. Once again, the record supports the trial court's finding. Detective Gilbert testified that the lack of medication did not appear to affect defendant's condition. Further, defendant admitted that he never requested or sought any assistance during the relevant period related to his physical condition. Defendant also admitted that there had been other times when he did not take his medication and he was still able to go to work and maintain his responsibilities during those times.

Considering the totality of the circumstances, the trial court did not err in finding that defendant's statements during his third custodial interview were voluntarily given. Accordingly, the trial court did not err in denying defendant's motion to suppress.

*Phillips*, 2011 WL 4375110 at *2-3.

Petitioner has failed to demonstrate that the determinations of fact upon which the

Michigan Court of Appeals relies are unreasonable. Those determinations are well-supported in the

record. *See* (Walker Hr'g Tr., ECF No. 21.) Certainly, as Petitioner argues, there are factors that

may indicate some element of coercion; but, the record reveals, and the state courts reasonably

found, that there are other factors that belie coercion. Thus, Petitioner has failed to show that the

court of appeals' application of "totality of the circumstances" test was unreasonable. That is a

particularly difficult burden here, where the state court is conducting a fact-specific inquiry guided

by a flexible rule:

-14-

[The] AEDPA's bar to relief applies with even greater force where, as here, we are evaluating a state-court decision that applied a flexible, fact-specific rule. *See Renico v. Lett*, 559 U.S. 766, 776, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (" '[T]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.' " (quoting Alvarado, 541 U.S. at 664, 124 S. Ct. 2140)).

*Simpson v. Warden, Warren Corr. Inst.*, 651 F. App'x 344, 356 (6th Cir. 2016). In this case, as in *Simpson*, the state court was called upon to conduct "a *Miranda* totality-of-the-circumstances analysis." *Id.* at 354. In this case, as in *Simpson*, "[b]ecause some factors [support Petitioner's claim], and other do not, [the] AEDPA bars us from granting [Petitioner] relief on this claim." *Id.* at 355.

II.      Petitioner's sentence (Issues II and VII)

Petitioner raises two issues with respect to his sentence. First, he argues that he was denied due process at sentencing because Detective Gilbert was permitted to address the court. Second, Petitioner contends that the correction of two of his sentences just a couple of hours after the sentences were imposed, was unconstitutional.

A.      Detective Gilbert's statement

At Petitioner's sentence hearing, Detective Gilbert was permitted to address the court:

Your Honor, as you know, I was the investigating officer in this case and as you know there are many other children that this man has hurt. I've got phone call from the parents, I've heard their cries, I've held their hand here in court, outside of court. I have a lot of cases come across my desk, this by far of all the murders, the robberies, and the other cases that I have had is by far the worst thing that I've ever seen come across my desk. It's absolutely horrible. The lives that have been damaged due to one person's actions are just–are just incredible to me. Just I would ask the Court to take that into consideration when sentencing Mr. Phillips. Thank you.

-15-

(Sentence Tr. at 11-12, ECF No. 26.)  The Michigan Court of Appeals concluded that it was

permissible for Detective Gilbert to make such a statement:

> Defendant contends that because the officer is not within the class of persons
> permitted to address the court at sentencing under MICH. CT. R. 6.425(E)(1)(c), and
> is not properly considered a "victim" under the Crime Victim's Rights Act, MICH.
> COMP. LAWS § 780.751 *et seq*., the officer had no right to address the trial court at
> sentencing.  We disagree.
>
> MICH. COMP. LAWS § 780.765 provides that a victim of a crime "has the right to
> appear and make an oral impact statement at the sentencing of the defendant." MICH.
> CT. R. 6.425(E)(1)(c) provides that a sentencing court must give "the defendant, the
> defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court
> of any circumstances they believe the court should consider in imposing sentence."
> Although MICH. CT. R. 6.425(E)(1)(c) mandates who must be permitted to address
> the court at sentencing, nothing in that court rule, or MICH. COMP. LAWS § 780.765,
> restricts the trial court from considering information from other persons.  As this
> Court recognized in *People v. Albert*, 207 Mich. App. 73, 74; 523 N.W.2d 825
> (1994), "a sentencing court is afforded broad discretion in the sources and types of
> information to be considered when imposing a sentence."  Thus, in [*People v.*]
> *Waclawski*, 286 Mich. App. [634, 692, 780 N.W.2d 321 (2009)], this Court
> concluded that it was not improper for the sentencing court to allow the victims'
> mothers to give victim impact statements at sentencing even though they were not
> direct victims.  Thus, the trial court had discretion to allow the investigating officer
> to address the court at sentencing.  Further, the officer did not provide any
> information that had not already been presented to the court, either through the
> testimony at trial or from others who had already addressed the court at sentencing.

*Phillips*, 2011 WL 4375110 at *5.

"The Due Process Clause does not offer convicted defendants at sentencing the same

'constitutional protections afforded defendants at a criminal trial.'"  *United States v. Alsante*, 812

F.3d 544, 547(6th Cir. 2016) (quoting *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir.

1992) (en banc)).[8]  The Due Process Clause "demands only that the sentencing hearing be

'fundamentally fair' and that the sentence turn on 'reliable information.'"  *United States v. Alsante*,

---

[8]Indeed, "under a federal statute, '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'" *Alsante*, 812 F.3d at 547.

812 F.3d 544 547-548 (6th Cir. 2016) (quoting *United States v. Gatewood*, 230 F.3d 186, 191 (6th Cir. 2000) (en banc)). Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

Here, Petitioner does not contend that the information Detective Gilbert provided was false. Instead, Petitioner simply claims the statement was not permitted under state law. The court of appeals ruled otherwise. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Thus, the Michigan Court of Appeals' determination that the state court is permitted to consider the statement of Detective Gilbert when sentence is imposed, conclusively resolves the issue.

-17-

B.    Revision of the sentence

The court initially sentenced Petitioner on three of the first-degree CSC counts to terms of imprisonment stated as a minimum term of months with a maximum term of life. (Sentence Tr. at 23-24, ECF No. 26.) Just a couple of hours later, the court concluded such sentences were improper. The court could sentence Petitioner to a term of imprisonment with a maximum and minimum stated as months or years, or it could sentence Petitioner to life imprisonment; but, it could not sentence Petitioner to a minimum term of months or years with a maximum term of life. (Resentence Tr. at 6-7, ECF No. 27.) Accordingly, the court changed the sentences to life imprisonment. (*Id.*)

Petitioner's constitutional challenge to the alteration of his sentence is not entirely clear. He acknowledges that the initial sentence was invalid. He acknowledges that the court is permitted to change the invalid aspect of the sentence to make it valid. But, in Petitioner's view, it was only the life-maximum aspect that was invalid and, thus, eliminating the minimum was outside the court's jurisdiction. The court of appeals disagreed:

> Although a trial court generally may not modify a valid sentence once it has been imposed, it may correct an invalid sentence. *People v. Wybrecht*, 222 Mich. App. 160, 168–169; 564 N.W.2d 903 (1997); *People v. Catanzarite*, 211 Mich. App. 573, 582; 536 N.W.2d 570 (1995); *see also* MICH. CT. R. 6.429(A).

> Under MICH. COMP. LAWS § 750.520b(2)(b), defendant was subject to a penalty of "imprisonment for life or any term of years, but not less than 25 years." MICH. COMP. LAWS § 769.9(2) provides:

>> In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not impose a sentence in which the

maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.

Because defendant's original sentences contained a minimum of a term of years and a maximum of life, they were invalid.  *People v. Parish*, 282 Mich. App. 106, 107; 761 N.W.2d 441 (2009).  A sentence that violates MICH. COMP. LAWS § 769.9(2) is wholly invalid and must be vacated in its entirety.  *Id.* at 108.  Accordingly, the trial court did not err by vacating defendant's invalid sentences and resentencing him for those offenses.

*Phillips*, 2011 WL 4375110 at *9.

There is no inherent constitutional violation in imposing a sentence characterized by a minimum term that is stated in months or years and a maximum term of life.  *See, e.g. Whalen v. United States,* 445 U.S. 684 (1980) (sentences of 20 years to life imprisonment); *In Re Stansell*, 828 F.3d 412 (6th Cir. 2016) (sentence of 20 years to life imprisonment).  The invalidity of such a sentence in Michigan is purely a state law issue.  The court of appeals determinations that the original sentence was invalid and the corrected sentence is valid are binding on this Court.  *See Wainwright,* 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6. Certainly, Petitioner has failed to demonstrate that his sentences as initially imposed or corrected, or the process employed to effect the correction, are contrary to or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief.

III.    Ineffective assistance of counsel (Issues III-VI)

The remainder of Petitioner's habeas issues depend on his claim that trial counsel rendered ineffective assistance.  According to Petitioner his trial counsel was ineffective because he failed to pursue an interlocutory appeal regarding suppression of Petitioner's confession; failed to introduce expert testimony from a psychiatrist or psychologist to support Petitioner's claim that his confession was coerced; failed to object to Detective Gilbert's statement at sentencing; failed to

-19-

cross-examine the father of victims AB, TB, and ZB as to why the father would permit his children to go to Petitioner's home after the initial allegations of sexual misconduct; failed to ask the father about a conversation Petitioner claims the father overheard regarding one victim's statement that the victims had lied; failed to introduce evidence that AB had sexually assaulted TB and ZB; failed to investigate whether the prior occupants of Petitioner's home had also been accused of sexual misconduct by AB, TB and ZB; failed to question ZB's mother with regard to her allegedly permitting her children to masturbate; failed to question OH (another victim who did not testify at trial) to establish that it was ZB and not Petitioner who sexually assaulted OH; failed to question CL (another victim who did not  testify at trial) to highlight the inconsistencies in CL's statements; failed to call a medical expert to testify regarding DL's claims that Petitioner had anally penetrated DL; failed to call an expert to testify regarding the questioning of the victims and the possibility the victims had been misled when questioned; failed to call a psychiatric expert to express an opinion on the ultimate issue of whether the victim had been sexually assaulted; and failed to call Terry J. Jackson or Connie and Kevin Ogle to testify regarding Petitioner's character and credibility.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be

-20-

considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claims:

> To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied a fair trial. *People v. Pickens*, 446 Mich. 298, 338; 521 N.W.2d 797 (1994). To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v. Johnnie*

*Johnson, Jr*, 451 Mich. 115, 124; 545 N.W.2d 637 (1996). Defendant must also overcome the presumption that the challenged action might be considered sound trial strategy. *People v. Tommolino*, 187 Mich.App 14, 17; 466 NW2d 315 (1991).

*          *          *

Defendant raises several ineffective assistance of counsel claims, most of which cannot succeed because defendant has failed to overcome the presumption of sound trial strategy or the requisite factual support is lacking. As previously explained, because defendant did not raise an ineffective assistance of counsel claim in the trial court, appellate relief is limited to errors apparent from the record. [citation omitted]

Defendant raises multiple issues relating to trial counsel's examination of witnesses and presentation of evidence. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v. Marcus Davis*, 250 Mich. App. 357, 368; 649 N.W.2d 94 (2002). Defendant must overcome the strong presumption that counsel exercised sound trial strategy. *Id* . This Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy and ineffective assistance of counsel will not be found merely because a strategy backfires. *People v. Duff*, 165 Mich. App. 530, 545–546; 419 N.W.2d 600 (1987).

Defendant argues that defense counsel should have cross-examined RB, the father of three of the victims, to elicit testimony that he did not suspect that his children were being sexually abused by defendant. However, the record discloses that defense counsel cross-examined RB on that subject. Counsel established that RB was aware of the children's allegations against defendant, that the children recanted those allegations to RB, that the children did not make any further allegations to RB, and that RB did not notice any changes in their behavior, so he had no reason to believe that anything was wrong with the children. Defendant has not shown that counsel's strategy in questioning RB was deficient or unsound.

Defendant also claims that RB should have been asked whether he overheard the children state that they had fabricated the allegations against defendant. However, defendant has not shown that any such statement would have been admissible for its truth under an exception to the hearsay rule.

Defendant also argues that counsel should have tried to admit evidence that one of the children had sexually abused his siblings. Apart from defendant's failure to establish the factual predicate for this claim, he has not overcome the presumption that counsel's failure to pursue this issue was reasonable trial strategy. Evidence that one of the children committed acts of sexual abuse against his younger siblings would not necessarily have be inconsistent with defendant's guilt. On the contrary,

it could have supported an inference that the child was exposed to sexual abuse and thereby lend support to the child's testimony that he was sexually abused by defendant.

*   *   *

Defendant also argues that counsel should have investigated the family who lived in his house before defendant's family moved in to determine whether the victims' family had made similar allegations against them.  Because defendant has not provided any evidence that any such similar situation existed with the previous residents, this ineffective assistance of counsel claim cannot succeed.

Defendant argues that counsel did not properly confront certain witnesses. He argues that counsel should have cross-examined DB, the mother of three of the victims, to establish her children's sexual behavior within the family home.  Counsel may have reasonably declined to pursue this subject matter because of its tendency to support an argument attributing the alleged sexual dysfunction to the children's experiences with defendant. Defendant has not overcome the presumption of sound strategy.

Defendant also argues that counsel should have questioned two other boys about inconsistencies in statements they had given.  However, neither of those boys testified at trial.  Thus, there is no merit to this claim.

Defendant next argues that counsel was ineffective for failing to call an expert witness to testify regarding his mental condition at the time of his third police interview.  However, defendant has not presented any offer of proof in support of this claim.  Because defendant has failed to factually support his claim and the substance of any expert testimony is not otherwise apparent from the record, this claim cannot succeed.

Defendant also argues that counsel should have obtained a medical examination of DL to determine whether he had been anally penetrated.  Even assuming that defendant could have compelled DL to submit to an examination, defendant has not submitted any offer of proof indicating that there was any likelihood that an examination could have established whether the child had been sexually penetrated.  Furthermore, even if an examination could have been obtained and there was a possibility that it could have revealed something probative, counsel reasonably may decided not to pursue it as a matter of trial strategy to avoid the risk of damaging results.  For these reasons, this ineffective assistance of counsel claim cannot succeed.

We find no merit to defendant's argument that trial counsel was ineffective for not pursuing an interlocutory appeal after defendant had been convicted.  After his convictions, defendant had the right to pursue an appeal as of right, which he later

-23-

exercised.  Further, trial counsel had not been appointed to pursue an appeal, and defendant had the right to request the appointment of appellate counsel to represent him on appeal.  Appellate counsel was later appointed and filed an appeal on defendant's behalf.  Defendant has not established any basis for further relief with respect to this issue.

Next, defendant argues that counsel was ineffective for not requesting that the children submit to independent psychological evaluations.  A psychological examination of a victim is only permissible where there is a compelling reason for the examination.  *People v. Graham*, 173 Mich. App. 473, 478; 434 N.W.2d 165 (1988).  Defendant has not shown any reason why psychological evaluations of the victims were necessary.  Accordingly, he cannot establish that counsel's failure to request psychological evaluations was objectively unreasonable, or that he was prejudiced by counsel's failure to file the request.

Next, the record does not support defendant's argument that counsel was ineffective for not eliciting information regarding the involvement of Children's Protective Services in the interviews of the children.  Although defendant suggests that it was possible that Detective Gilbert influenced the children through improper questioning during interviews, the testimony at trial established that Kelly Palmer, an investigator with Children's Protective Services, conducted forensic interviews of the children on the day defendant was arrested.  Detective Gilbert was present for the interviews, but they were conducted by Palmer.  Further, the record discloses that defense counsel cross-examined Palmer at trial regarding her interview techniques and adherence to forensic protocols.  Defendant has not shown that counsel's performance in this regard was objectively unreasonable.

Defendant next argues that counsel was ineffective for failing to call three witnesses, Kevin Ogle, Connie Ogle, and Terry Jackson, who could have provided favorable character testimony.  Because this issue was not raised in the trial court, there is no record of what testimony the witnesses actually could have provided.  Without a record of the witnesses' proposed testimony, defendant cannot establish that he was prejudiced by counsel's failure to call the witnesses, or overcome the presumption that counsel's decision not to call the witnesses was sound trial strategy. [citation omitted].

Defendant has not shown that he was denied the effective assistance of counsel.

*Phillips*, 2011 WL 4375110 at *4, 6-9.  Although the court of appeals relied upon state court authority, the standard applied is the same as the *Strickland* standard.  Thus it cannot be said that the state court's decision is contrary to clearly established federal law as set forth in *Strickland*.

-24-

Moreover, the state court applied the test reasonably.  In some instances, Petitioner simply mischaracterizes his counsel's performance.  Counsel definitely objected to the invalid sentence. (Sentence Tr. at 25-26, ECF No. 26.)  Counsel also cross-examined the father of AB, TB, and ZB on virtually all of the subjects suggested by Petitioner.  (Trial Tr. III at 102-103, ECF No. 22.)  Counsel also explored the protocol for forensic examination of sexual assault victims and the practice with respect to these victims with Detective Gilbert, Officer Wolschleger, and forensic interviewer Kelly Palmer.  (Trial Tr. II at 193-201, ECF No. 20; Trial Tr. IV at 68-71, 100-101 ECF No. 23.)  Thus, Petitioner has failed to establish ineffective assistance with regard to those claims.

With respect to other claims, the course Petitioner wanted his counsel to pursue was meritless.  Counsel's failure to present issues that do not have merit does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  It would have been pointless for counsel to explore specific instances of the victim's sexual conduct because such evidence would have been inadmissible by Michigan statute. MICH. COMP. LAWS § 750.520j.[9]  Similarly, it would have been pointless for counsel to explore the victims' father's statements regarding the victim's out-of-court statements.  As the court of appeals recognized, such testimony would have been inadmissible hearsay.  Finally, Petitioner's counsel was not ineffective for failing to object to

---

[9]The statute bars admission of evidence of specific instances of a victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct.  MICH. COMP. LAWS § 750.520j(1).  Petitioner suggests the bar can be overcome by requesting an *in camera* hearing to determine whether the probative value of the evidence outweighs its prejudicial nature.  Such a hearing is available, however, only where the evidence is of the victim's past sexual conduct with the actor or where it shows the source of semen, pregnancy, or disease.  *Id.*  The evidence Petitioner sought to admit does not fit within those narrow exceptions.

Detective Gilbert's statement at sentencing, because there is simply no legal barrier to the court's consideration of such a statement.

With respect to many of counsel's alleged failures, the court of appeals determined that Petitioner had failed to overcome the presumption that counsel's failure to pursue a line of questioning or put a witness on the stand was justified by strategic considerations.  Even if counsel might have been able to trip OH and CL up with inconsistencies in their statements to Detective Gilbert, there is an obvious strategic purpose behind not calling two more children, OH and CL, to testify regarding sexual abuse they suffered at the hands of Petitioner or in his home.  Similarly, the court of appeals identified an apparent strategic purpose in not eliciting testimony that would reveal dysfunctional sexual activity among Petitioner's alleged victims.  Such testimony would invite an argument that the dysfunction was the product of Petitioner's abuse of the victims.

Petitioner offers nothing to demonstrate that counsel's failure to call several witnesses (prior residents, character witnesses, or doctors) was objectively unreasonable or prejudicial, because he offers nothing to support his speculation that the testimony might have been favorable to him.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*,

932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).[10]  The state court's rejection of such claims,

therefore, was neither contrary to nor an unreasonable application of clearly established federal law.

Finally, with regard to Petitioner's claim that his counsel was ineffective for failing

to file an interlocutory appeal, even if Petitioner could show counsel's inaction fell below an

objective standard of reasonableness, he cannot demonstrate the requisite prejudice.  Petitioner

eventually filed his appeal by right.  He raised every issue that trial counsel might have raised by

interlocutory appeal.  The court of appeals ruled against him.  Petitioner simply cannot show that

the outcome would have been different if the appellate court had considered his issues on

interlocutory appeal.  *See United States v. Gordon*, 657 F. App'x 773, 776-777 (10th Cir. 2016)

("Gordon . . . cannot show prejudice . . . we eventually denied relief on direct appeal [; h]ad we

considered his claim on interlocutory appeal . . . the outcome would have been the same.") (footnote

---

[10]*See also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said.  Speculation cannot suffice to establish the requisite prejudice."); *Neverson v. Farquharson*, 366 F.3d 32, 45 (1st Cir. 2004) ("[H]e has not offered any evidence of what that person would have said, let alone shown that the lack of such testimony materially prejudiced his defense.");  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) ("Zettlemoyer cannot meet his burden . . . based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."); *Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) ("[Petitioner's] failure to [show] what an expert witness would have testified regarding the mental health evidence . . . reduces any claim of prejudice to mere speculation and is fatal to his claim."); *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must . . . set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) ("Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result.") (internal citations omitted); *United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) ("Recognizing the deferential standard when reviewing the conduct of counsel, we decline to find prejudice in this situation when there is no evidence other than speculation to support the finding."); *Smith v. Adams*, 506 F. App'x 561, 565 (9th Cir. 2013) ("Smith merely speculates as to the expert testimony that could have been produced, but '[s]peculation about what an expert could have said is not enough to establish prejudice.'"); Waterhouse v. Hatch, 498 F. App'x 811, 813 (10th Cir. 2012 ) ("[C]ounsel's failure to secure expert testimony was not prejudicial . . . the potential value of such expert testimony [regarding the victim's credibility] would be speculative."); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) ("This prejudice burden is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'").

and citations omitted).  Accordingly, he cannot show that the state court's determination rejecting Petitioner's claim is contrary to or an unreasonable application of clearly established federal law.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because his petition fails to present a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: <u>January 26, 2017</u>                                    <u>/s/ Robert Holmes Bell</u>
                                                                 ROBERT HOLMES BELL
                                                                 UNITED STATES DISTRICT JUDGE